**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF ARKANSAS**

| | |
|---|---|
| IN RE: | |
| JUSTIN W. ROGERS AND SYDNEY M. ROGERS, | Case No.   6:24-bk-71026 |
| DEBTORS. | Chapter 13 |
| KAPITUS SERVICING, INC., as agent for Kapitus LLC, | |
| PLAINTIFF, | |
| v. | ADV. PRO. NO. _____ |
| JUSTIN W. ROGERS, an individual, AND SYDNEY M. ROGERS, an individual, | |
| DEFENDANTS. | |

**COMPLAINT TO DETERMINE NONDISCHARGEABILITY OF DEBT OWED TO KAPITUS SERVICING, INC.**

Plaintiff, Kapitus Servicing, Inc. as agent for Kapitus LLC ("Kapitus"), by and through its undersigned counsel, files this *Complaint to Determine Nondischargeability of Debt Owed to Kapitus Servicing, Inc.* (the "Complaint") pursuant to Section 523 of Title 11 of the United States Code requesting a money judgment against Defendants, Justin W. Rogers ("J. Rogers") and Sydney M. Rogers ("S. Rogers," and together with J. Rogers, "Debtors"), and objecting to the dischargeability of a pre-petition debt owed to Kapitus. In support thereof, Kapitus alleges as follows:

1

## JURISDICTION AND VENUE

1. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) and is brought pursuant to 11 U.S.C. §§ 523(a) and Rule 4007 of the Federal Rules of Bankruptcy Procedure.

2. This Court has jurisdiction as to the claims for relief sought herein under 28 U.S.C. §§ 157 and 1334.

3. Venue is proper pursuant to 28 U.S.C. § 1409(a).

4. If the Court should find that this is not a core proceeding, Kapitus consents to entry of final judgment by the Court pursuant to Fed. R. Bankr. P. 7008.[1]

5. This Adversary Proceeding is brought in connection with the Chapter 13 case filed by Debtors as case number 6:24-bk-71026, now pending in this Court.

6. Pursuant to Fed. R. Bankr. P. 4007(c) and the *Notice of Chapter 13 Bankruptcy Case* (Case No. 6:24-bk-71026, Doc. 6), October 15, 2024, is the deadline for filing of complaints objecting to discharge and for determination of dischargeability of debts. Therefore, this Complaint is timely filed.

## PARTIES

7. J. Rogers is an individual residing in the State of Arkansas at 226 Rolling Hills Road, Arkadelphia, Arkansas 71923.

8. S. Rogers is an individual residing in the State of Arkansas at 226 Rolling Hills Road, Arkadelphia, Arkansas 71923.

---

[1] Notwithstanding any of the allegations and claims herein, the institution of this Adversary Proceeding, the filing of this complaint and any other appearance in this Adversary Proceeding and in the above-referenced bankruptcy case (the "Bankruptcy Case"), including the submission of motions, opposition papers, and entry of orders, is without waiver, and express reservation, of any and all of Kapitus' rights, defenses and remedies available at law and in equity, including, without limitation, under the Agreement (as defined below), Uniform Commercial Code, any other applicable federal or state law and/or commercial code, and the Federal Arbitration Act, 9 U.S.C. § 1 *et seq*. If and when Plaintiff shall file a proof of claim in the Bankruptcy Case (the "Proof of Claim"), Plaintiff expressly incorporates any reservation of rights that it shall incorporate in the Proof of Claim.

9. Debtors are or were, at all relevant times, owners, officers, directors, members, and/or managers of J. W. Rogers Electric, Inc. d/b/a J W Rogers Electric, an Arkansas for profit corporation ("J.W. Electric"). At all times relevant hereto, Debtors were in control of J.W. Electric, and made decisions and statements to Kapitus relevant to the issues herein.

10. Kapitus is a Virginia corporation with principal offices located in Arlington, Virginia and in New York, New York.

11. Service may be obtained on Debtors by mailing a copy of the summons and complaint to Debtors at the address shown on their petition and by service, via first class mail, on Debtors' attorney pursuant to Fed. R. Bankr. P. 7004(b)(9) and (g).

## FACTS

**I. Transaction Documents**

12. Pursuant to the *Forward Purchase Agreement (Fixed ACH Delivery)* dated August 22, 2023, and related *Security Agreement* and *Guaranty*, as modified by that certain *Modification Agreement Merchant Information* dated February 1, 2024 (the "Modification," and collectively, the "Agreement"), Kapitus purchased $288,000.00 (the "Receipts Purchased Amount") of J.W. Electric's future receipts, accounts, contract rights and other obligations arising from or relating to the payment of monies from J.W. Electric's customers or third-party payors, either paid by cash, check, credit cards, charge cards, debit cards, prepaid cards, mobile payments, electronic transfer or other similar payment method (collectively, the "Receivables"). Copies of the documents that comprise the Agreement are attached hereto as collective **Exhibit A**.

13. Pursuant to the terms of the *Guaranty*, Debtors personally and unconditionally guaranteed J.W. Electric's performance of all representations and obligations under the Agreement.

14. Kapitus perfected its security interest in the collateral granted by the Agreement by filing a UCC-1 Financing Statement with the Arkansas Secretary of State at File Number 87719410 (the "Financing Statement"). A true and correct copy of the Financing Statement is attached as **Exhibit B**.

II. **Debtors' Misrepresentations to Kapitus to Induce Funding Under the Agreement**

15. Kapitus requires, as a threshold step in its consideration of whether to purchase a merchant's future receivables, that each merchant sign the Agreement and related documents and provide certain written representations about its financial situation, operational plans, and intentions. Because Kapitus' funding process is truncated from that of a standard financing institution as is typical for the alternative financing industry, Kapitus relies heavily upon a merchant's representations and warranties. In fact, Kapitus' counter signature to the Agreement and funding are the last steps in the funding process.

   a. The Representations and Acknowledgements

16. Prior to funding under the Agreement, and in order to induce Kapitus to advance funds pursuant to the Agreement, J. Rogers executed a certain *Representations and Acknowledgments – Funding is Contingent Upon Your Completion and Review by Kapitus* form (the "R&A") attached hereto as **Exhibit C**, pursuant to which J. Rogers acknowledged and represented to Kapitus, among other things, that

- He was the authorized representative of J.W. Electric;
- He was the authorized signatory on the business bank account;

4

- J.W. Electric did not and would not have financing products that obligated the business to make payments on a less than monthly basis without approval from Kapitus;

- He did not anticipate closing or selling the business for any reason over the next 12 months;

- He did not plan to file for bankruptcy protection in the next 12 months for either the business or himself personally;

- Neither the business nor him were in arrears with their landlord or any other creditors or taxing authorities;

- Neither the business nor him were in any pending litigation; and

- All information that he provided to Kapitus to obtain financing accurately reflected the current ownership of the business, business status and/or financial condition of the business.

Ex. C (R&A) at 1.

17. Pursuant to the R&A, J. Rogers also acknowledged that "I submitted the statements herein with the intent to obtain financing, Kapitus is relying on such statements to determine whether to approve the financing and that any false statements or misrepresentations made to obtain funding constitute fraud and will subject me and my business to legal action." *Id.* at 1-2.

b. **The Agreement**

18. In the Agreement, Debtors represented to Kapitus that the funding would be used exclusively for a business purpose and no other. Ex. A (Agreement) at §2.13.

19. Debtors also represented and agreed "not to create, incur, assume, or permit to exist, directly or indirectly, any additional financings, loans, lien or other encumbrance of any kind with respect to any of the Collateral . . . ." Ex. A (Security Agreement) at 2 (Negative Pledge).

5

20. Debtors also made the following additional representations and warranties to Kapitus via the Agreement, each of which Kapitus relied upon to provide funding to J.W. Electric:

> **II. REPRESENTATIONS, WARRANTIES AND COVENANTS.** Seller and Guarantor represents, warrants and covenants that as of this date and during the term of this Agreement:
>
> 2.1     **Financial Condition and Financial Information.** The information and financial statements which have been furnished to Purchaser by Seller and Guarantor, and such future statements which will be furnished hereafter at the request of Purchaser, fairly represent the ownership and operations of the Seller's business and the financial condition of Seller and Guarantor at such dates, and since those dates, there has been no material adverse change, financial or otherwise in such condition, operation or ownership of Seller or Guarantor (as applicable). Seller and Guarantor are current on any and all lease, rent or mortgage payments due. Seller and Guarantor are currently in compliance with all loans, financing agreements, promissory notes, and/or other obligations of indebtedness, except as disclosed to Purchaser. No material changes, financial or otherwise, in the condition, operation or ownership of Seller or Guarantor (as applicable) are in any way expected or anticipated and Seller and Guarantor do not anticipate closing or selling Seller's business. Neither the Seller nor the Guarantor are party to any pending litigation that is expected to have a material impact on the Seller or Guarantor. Seller has a continuing, affirmative obligation to advise Purchaser of any material change in its financial condition, operation or ownership. Purchaser may request statements at any time during the performance of this Agreement and the Seller shall provide them to Purchaser within five (5) business days. Seller's failure to do so is a material breach of this Agreement.
>
> 2.2     **Compliance with Law**. Seller is in compliance and shall comply with all laws, including possession of all necessary permits, authorizations and licenses to own, operate and lease its properties and to conduct the business in which it is presently engaged.
>
> . . .
>
> 2.5     **Tax Obligations**. Seller is currently in compliance with all federal state and local tax laws, has filed all returns, and has paid all taxes due, except as disclosed to Purchaser. No federal, state, or local taxing authority has filed any lien against the assets of the Seller and/or Guarantor. Seller or Guarantor shall pay all taxes owed to federal, state, or local governments when due.
>
> 2.6     **Deposit Arrangements and Delivery of Receipts**. Without Purchaser's prior written consent, Seller will not (i) change the account designated for the

delivery of Receipts; (ii) set up multiple accounts into which any of the Seller's receipts are deposited or otherwise transferred; (iii) block or stop payment on Purchaser debit; (iv) permit any event to occur that could cause diversion of any of Seller's receipts; (v) or take any other action that could have any adverse effect upon Seller's obligations under the Transaction Documents. Seller will batch out receipts with all payment processors on a daily basis.

. . .

2.9     **No Bankruptcy or Insolvency**. Seller is solvent, no transfer of property is being made by Seller, and no obligation is being incurred by Seller in connection with the sale of Receipts with the intent to hinder, delay, or defraud either present or future creditors of Seller. Seller represents that it is not insolvent and does not contemplate and has not filed any petition for bankruptcy protection under Title 11 of the United States Code or any state-law analogue, and there has been no involuntary petition under such laws brought or pending against Seller. Seller further warrants that it does not anticipate filing any such receivership or bankruptcy petition and it does not anticipate that an involuntary petition will be filed against it.

2.10    **Other Financing. Seller shall not enter into any arrangement, agreement or commitment for any additional financing, whether in the form of a purchase and sale of receivables, the sale of accounts receivable, or a loan (whether secured or unsecured) with any party other than Purchaser without Purchaser's written permission.**

2.11    **Unencumbered Receipts**. Seller has good, complete and marketable title to all Receipts, free and clear of any and all liabilities, liens, claims, changes, restrictions, conditions, options, rights, mortgages, security interests, equities, pledges and encumbrances of any kind or nature whatsoever or any other rights or interests that may be inconsistent with the transactions contemplated with, or adverse to the interests of Purchaser.

. . .

2.13.   **Business Purpose**. Seller is a valid business in good standing under the laws of the jurisdictions in which it is organized and/or operates, and Seller is entering into this Agreement for business purposes and not as a consumer for personal, family or household purposes.

. . .

2.16    **Accuracy of Information**. All information provided by Seller and Guarantor to Purchaser in the Transaction Documents, in any application, in all other Seller forms and in response to any request by Purchaser for information whether oral or in writing, is true, accurate and complete in all respects.

Ex. A (Agreement) at 3-4 (emphasis in original).

21.  In addition, it was further represented in the Agreement that J.W. Electric would only utilize one account acceptable to Kapitus (the "Account") and irrevocably authorized Kapitus to ACH debit the specific remittances from that Account provided under the Agreement. *Id.* at §§ 1.3, 2.6.

22.  Pursuant to the Agreement, Debtors agreed that "**[i]f any information provided is false or misleading, Seller shall be held liable for fraud in the inducement and fraud and Guarantor(s) shall be personally liable for the Seller's obligations**." *Id.* at 2 (emphasis in original).

### III.  Kapitus Justifiably Relied on Debtors' Representations

23.  Kapitus justifiably and reasonably relied on Debtors' representations in the R&A and the Agreement when it provided the funding to J.W. Electric under the Agreement.

24.  Upon information and belief, Debtors made affirmative misrepresentations in the R&A and the Agreement, each of which Kapitus relied upon to provide funding to J.W. Electric including, but not limited to, the following:

- misrepresented that the business and Debtors were solvent (*see* Ex. A (Agreement) at §§ 2.1, 2.9; R&A);

- misrepresented the financial condition of the business and Debtors and/or omitted material adverse changes in the condition, operation and ownership of the business (*see* Ex. A (Agreement) at § 2.1; R&A);

- misrepresented that they would use the proceeds under the Agreement for business purposes alone (*see* Ex. A (Agreement) at § 2.13);

- misrepresented that they would not obtain additional financing commitments and loans and that they would not further encumber the business receipts without Kapitus' approval (*see* Ex. A (Agreement) at §§ 2.10-2.11);

- misrepresented that they would use one account for the business and that they would provide Kapitus irrevocable access to the business funds (*see* Ex. A (Agreement) at 1-2, §§ 1.3, 2.6);

- misrepresented that they would not permit diversion of the Receivables and they would not engage in actions that would have an adverse effect upon J.W. Electric's obligations under the Agreement (*see* Ex. A (Agreement) at §§ 1.1, 2.6); and

- misrepresented that they were in compliance with all laws, including tax laws (*see* Ex. A (Agreement) at §§ 2.2, 2.5).

25. Upon information and belief, J.W. Electric and Debtors have been in a precarious position for some time prior to the funding provided by Kapitus and the proceeds of Kapitus' funding was not used for its stated purpose.

26. Upon information and belief, at the time the Agreement was being negotiated J.W. Electric and Debtors were behind on payments to other creditors and financial institutions.

27. Upon information and belief, Debtors and J.W. Electric did not intend to provide irrevocable access to Kapitus to the Receivables and intended to divert the Receivables from Kapitus.

28. Additionally, Debtors and J.W. Electric obtained various financing products without approval from Kapitus.

29. Specifically, concurrently with or shortly after executing the Agreement, Debtors obtained numerous alternate financing commitments without Kapitus' approval including, but not limited to, financing with Forward Financing, Chase Auto Finance, Patter Fedcu, and RRCU. *E.g.,* (Case No. 6:24-bk-71026, Doc. 13 (Summary of Assets and Liabilities)).

30. In summary, Debtors made numerous affirmative misrepresentations, each of which Kapitus reasonably relied upon to fund money to J.W. Electric.

IV. **Kapitus' Funding and Debtors' Immediate Default**

31. In reliance on the representations made by Debtors in the R&A and the Agreement and the supporting documentation provided, Kapitus agreed to counter-execute the Agreement and provide funding to J.W. Electric on the terms and conditions set forth in the Agreement.

32. By August 22, 2023, Kapitus transferred the purchase price less applicable fees into the Account.

33. In return, J.W. Electric and Debtors were to remit weekly payments of $3,696.00 to Kapitus, via ACH debit from the Account, until the entire Receipts Purchased Amount and all other fees and expenses provided for in the Agreement were paid in full.

34. Pursuant to the Agreement, Debtors were to maintain the Account with sufficient funds to cover the payments due under the Agreement to Kapitus. However, upon information and belief, Debtors had no intention to honor the Agreement.

35. In fact, less than five (5) months after the funding by Kapitus, Debtors defaulted on their payment obligations, prevented Kapitus' ACH payments to process and prohibited Kapitus from collecting the amounts rightly owed to it under the Agreement by placing a stop payment on the Account.

36. Specifically, Kapitus was only able to draft eighteen (18) ACH payments (out of approximately 78 agreed upon payments) before Kapitus could no longer debit the Account for its purchased Receivables due to "Payment Stopped or Stop Payment on Item." Those eighteen (18) withdrawals represented less than 24% of the agreed upon number of payments.

37. Acknowledging their inability to remit the Receipts Purchased Amount in accordance with the terms of the Agreement, J.W. Electric and Debtors executed the

Modification reducing the weekly payments remitted under the Agreement to $1,848.00 until March 29, 2024, and $2,772.00 thereafter and until the Receivables Purchased Amount and all other fees and expenses provided for in the Agreement were paid in full. (*See* Ex. A)

38. Less than one (1) month after executing the Modification, Debtors again defaulted on their payment obligations and prevented Kapitus' ACH payments to process due to "Insufficient Funds."

39. Upon information and belief, tax liens were filed against Debtors shortly after the funding by Kapitus due to Debtors' failure to comply with state and/or local tax laws.

40. By May of 2024, all of Kapitus' attempts to debit the Account for its purchased Receivables were returned due to a "Payment Stopped or Stop Payment on Item."

41. On June 25, 2024, Debtors filed their Chapter 13 bankruptcy petition. (Case No. 6:24-bk-71026, Doc. 1).

42. Kapitus is a creditor in this bankruptcy case in the amount of at least $248,531.49 as of the petition date.

43. Upon information and belief, Debtors never intended to perform their obligations under the Agreement and obtained money from Kapitus by false pretenses, false statements, or actual fraud.

### COUNT I
**(Nondischargeability of Debt Pursuant to 11 U.S.C. § 523(a)(2)(A))**

44. Kapitus repeats and incorporates the allegations set forth above as though fully stated herein.

45. Debtors' liability to Kapitus, as alleged herein, is a debt for money owed and services provided within the meaning of 11 U.S.C. § 523(a)(2).

11

46. Debtors obtained money and services by false pretenses, false representation(s), and/or actual fraud within the meaning of 11 U.S.C. § 523(a)(2)(A).

47. As more fully detailed herein, upon information and belief, Debtors made material misrepresentations of fact including, but not necessarily limited to, representing that: (1) Debtors and J.W. Electric were not insolvent; (2) J.W. Electric's financial condition was accurately reflected to Kapitus; (3) J.W. Electric would use Kapitus' funding solely for business purposes; (4) J.W. Electric/Debtors would not incur any additional financing without Kapitus' approval and would not encumber Kapitus' collateral; (5) J.W. Electric would use one Account for payment under the Agreement and provide Kapitus with irrevocable access to that Account for payment; (6) Debtors and J.W. Electric would neither permit diversion of the Receivables nor engage in actions that could have an adverse effect upon J.W. Electric's obligations under the Agreement; and (7) J.W. Electric/Debtors were not in arrears with any of their creditors or taxing authorities.

48. Debtors made material omissions of fact that induced Kapitus into funding the proceeds under the Agreement.

49. Upon information and belief, at the time the representations and/or material omissions were made, Debtors knew that their representations and omissions were false, untrue, misleading, and, as a direct and proximate cause of these intentional misrepresentations and omissions, Debtors knew that Kapitus would be induced to provide J.W. Electric the funding contemplated by the Agreement.

50. Upon information and belief, Debtors intended to induce Kapitus to act or refrain from acting upon their misrepresentations and/or material omissions, and Kapitus justifiably relied upon such false representations and omissions.

51. Kapitus suffered damages as a direct and proximate consequence of the misrepresentations made by Debtors.

52. As a result of misrepresentations and fraud by Debtors, Debtors obtained funding from Kapitus which would not have been authorized by Kapitus if the misrepresentations had not been made, or if material facts that were omitted and concealed, were actually disclosed.

53. Upon information and belief, all of the acts and omissions that constitute a breach or default of the Agreement were performed or omitted by, at the direction of, or with the consent of Debtors.

54. Kapitus is entitled to an Order from this Court declaring that, pursuant to 11 U.S.C. § 523(a)(2)(A), the debt owed to Kapitus is non-dischargeable. Kapitus is also entitled to its attorneys' fees and costs incurred in prosecuting this Complaint along with interest at the statutory rate.

## COUNT II
### (Nondischargeability of Debt Pursuant to 11 U.S.C. §523(a)(2)(B))

55. Kapitus repeats and incorporates the allegations set forth above as though fully stated herein.

56. Debtors' liability to Kapitus, as alleged herein, is a debt for money owed and services provided within the meaning of 11 U.S.C. § 523(a)(2).

57. Pursuant to 11 U.S.C. §523(a)(2)(B), a debt in which a debtor obtains money by a statement in writing that is materially false respecting an insider's financial condition, on which the creditor reasonably relied, and which the debtor caused to be published with intent to deceive is nondischargeable.

58. Upon information and belief, J.W. Electric, an insider of Debtors, did obtain money from Kapitus by the following written, materially false statements respecting J.W.

Electric's financial condition on which Kapitus reasonably relied, among others, that: (1) Debtors and J.W. Electric were not insolvent; (2) J.W. Electric's financial condition was accurately reflected to Kapitus; (3) J.W. Electric would use Kapitus' funding solely for business purposes; (4) J.W. Electric/Debtors would not incur any additional financing without Kapitus' approval and would not encumber Kapitus' collateral; (5) J.W. Electric would use one Account for payment under the Agreement and provide Kapitus with irrevocable access to that Account for payment; (6) Debtors and J.W. Electric would neither permit diversion of the Receivables nor engage in actions that could have an adverse effect upon J.W. Electric's obligations under the Agreement; and (7) J.W. Electric/Debtors were not in arrears with any of their creditors or taxing authorities.

59. Upon information and belief, as fully detailed above, at the same time the representations were made, Debtors knew these representations were materially false, untrue, and misleading.

60. Debtors caused these false statements to be made in writing, including, but not limited to publishing such statements in the pre-funding documentations and Agreement.

61. J.W. Electric is an insider of Debtors, because, at the time, Debtors served as an owner, shareholder, officer and/or director of J.W. Electric, and/or person in control of J.W. Electric, within the meaning of "insider" under 11 U.S.C. § 101(31)(A)(iv).

62. Kapitus reasonably relied on these written statements made by Debtors in deciding to transfer the funds to J.W. Electric.

63. Kapitus suffered damages as a direct and proximate consequence of the materially false statements made by Debtors.

64. As a result of these materially false written statements by Debtors, Debtors obtained from Kapitus, *inter alia*, the funding under the Agreement which would not have been authorized by Kapitus if the materially false statements had not been made.

65. Debtors' activities described above constitute obtaining money by materially false written statement regarding an insider's financial condition, on which Kapitus relied, and which Debtors made with the intent to deceive.

66. Kapitus is entitled to an Order from this Court declaring that, pursuant to 11 U.S.C. § 523(a)(2)(B), the debt owed to Kapitus is non-dischargeable. Kapitus is also entitled to its attorneys' fees and costs incurred in prosecuting this Complaint along with interest at the statutory rate.

## COUNT III
### (Nondischargeability of Debt Pursuant to 11 U.S.C. § 523(a)(4))

67. Kapitus repeats and incorporates the allegations set forth above as though fully stated herein.

68. Debtors' liability to Kapitus, as alleged herein, is a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny" within the meaning of section 523(a)(4) of the Bankruptcy Code.

69. J.W. Electric and Debtors defaulted on their obligations under the Agreement almost immediately after funding.

70. Because of the insolvency of J.W. Electric, Debtors had fiduciary obligations to Kapitus and its creditors.

71. Upon information and belief, Debtors obtained the funding by committing fraud and defalcation while acting in a fiduciary capacity as an owner and officer of J.W. Electric.

72. Upon information and belief, Debtors entered into the Agreement with the intent to transfer the funds advanced by Kapitus and prevent Kapitus from collecting the obligations owed to it.

73. Upon information and belief, Debtors obtained the funding and took the funding by committing fraud and defalcation while acting in a fiduciary capacity as an owner and officer of J.W. Electric.

74. Upon information and belief, Debtors misappropriated portions of the funding and Receivables for their own benefit by fraudulent intent or deceit.

75. Upon information and belief, Debtors used the funds received and the Receivables without explanation, reason or purpose relating to J.W. Electric's business, and failed to use the funds for business materials as represented in the pre-funding documentations.

76. Officers and directors of a corporation have fiduciary duties to the corporation's creditors when the corporation is insolvent or in the zone of insolvency.

77. When a company becomes insolvent, the directors stand in a trust relation towards creditors, and as trustees of corporate properties for the benefit of creditors. Hence, the directors of an insolvent corporation are placed in a fiduciary relation to its creditors.

78. Debtors were an officer and/or director of J.W. Electric. Upon information and belief, J.W. Electric was insolvent at the time it received funds from Kapitus or became insolvent shortly thereafter. Therefore, Debtors owed fiduciary duties to manage J.W. Electric's assets in trust for its creditors, including Kapitus.

79. Debtors' failure to manage J.W. Electric's assets is a breach of fiduciary duty.

80. Upon information and belief, Debtors used their power as an officer or director of J.W. Electric for the purpose of obtaining a preference or advantage to themselves.

81. Upon information and belief, Debtors misappropriated portions of J.W. Electric's receipts for their own benefit.

82. These were breaches of fiduciary duty, and Debtors' actions in violation of these fiduciary duties constitute legal fraud.

83. Virginia law governs the Agreement.

84. Under Virginia law, an express trust can be found through the parties' actions and does not need to be in writing. All that is necessary is the unequivocal intent that the legal estate be vested in one person, to be held in some matter or for some purpose on behalf of another. A trust is created if the intention is that the money be kept or used as a separate fund for the benefit of the payor or a third person.

85. An express trust is a fiduciary relationship with respect to property.

86. Here, the parties intended to and did enter into an express trust, and Debtors owed a fiduciary duty to Kapitus. Debtors were supposed to hold J.W. Electric's receipts in the Account for Kapitus' benefit. Upon information and belief, they did not do so.

87. Kapitus sustained damages as a result of Debtors' fraud and defalcation while acting as a fiduciary, their embezzlement and/or larceny of the funding and Receivables.

88. Upon information and belief, all of the acts and omissions that constitute a breach or default of the Agreement were performed or omitted by, at the direction of, or with the consent of, Debtors and thus Debtors are in breach of the Agreement giving Kapitus a right to recover damages.

89. Debtors' obligation to Kapitus is a debt for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny, and is nondischargeable.

90. Kapitus is entitled to an Order from this Court declaring that, pursuant to 11 U.S.C. § 523(a)(4), the debt owed to Kapitus is non-dischargeable. Kapitus is also entitled to its attorneys' fees and costs incurred in prosecuting this Complaint along with interest at the statutory rate.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Kapitus requests judgment against Debtors as follows:

A. On its First Claim for Relief, for judgment against Debtors in the amount owed to Kapitus and determining that such debt is not dischargeable in the Bankruptcy Case, in any other chapter under Title 11 to which this case may be converted, and in any future bankruptcy case filed by or against Debtors;

B. On its Second Claim for Relief, for judgment against Debtors in the amount owed to Kapitus and determining that such debt is not dischargeable in the Bankruptcy Case, in any other chapter under Title 11 to which this case may be converted, and in any future bankruptcy case filed by or against Debtors;

C. On its Third Claim for Relief, for judgment against Debtors in the amount owed to Kapitus and determining that such debt is not dischargeable in the Bankruptcy Case, in any other chapter under Title 11 to which this case may be converted, and in any future bankruptcy case filed by or against Debtors;

D. Granting interest, attorneys' fees and costs herein incurred; and

E. Granting such other and further relief as this Court may deem just and proper.

Date: October 15, 2024.

                                      Respectfully Submitted,

                                      /s/ R. Spencer Clift, III
                                      R. Spencer Clift, III (TNB #20445)

                                      ***Counsel for Kapitus Servicing, Inc., as agent for Kapitus LLC***

OF COUNSEL:

BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.
165 Madison Avenue, Suite 2000
Memphis, Tennessee 38103
Tel:    (901) 577-2216
Fax:   (901) 577-0834
Email: sclift@bakerdonelson.com

19